The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

### I. (a) PLAINTIFFS

CHRISTOPHER LAMBERT

**(b)** County of Residence of First Listed Plaintiff  Greenbrier
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Rahul Munshi, Esq., Console Mattiacci Law,
1525 Locust Street, 9th Fl., Philadelphia, PA 19102, 215-545-7676

### DEFENDANTS

HOLY FAMILY UNIVERSITY

County of Residence of First Listed Defendant  Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

### II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

### III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

### V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. § 12101, et seq. ("ADA"); 43 P.S. § 951, et seq. ("PHRA"); Phila. Code § 9-1101, et seq. ("PFPO")

Brief description of cause:
Plaintiff was discriminated against because of his disability.

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☒ Yes  ☐ No

### VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE  November 24, 2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

10/2024

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: ___Philadelphia, PA 19114_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                    Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?      Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?           Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☒ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Christopher Lambert | : | CIVIL ACTION |
|           Plaintiff<br>v. | :<br>: | |
| Holy Family University | : | |
|           Defendant | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    ( X )

| | | |
|---|---|---|
| November 24, 2025 | _[signature]_ | Plaintiff, Christopher Lambert |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-545-7676 | 215-827-5101 | munshi@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER LAMBERT**<br>**White Sulphur Springs, WV 24986**<br><br>**Plaintiff,**<br><br>v.<br><br>**HOLY FAMILY UNIVERSITY**<br>**9801 Frankford Avenue**<br>**Philadelphia, PA 19114**<br><br>**Defendant.** | **CIVIL ACTION NO.:**<br><br><br>**COMPLAINT AND JURY TRIAL**<br>**DEMAND** |

## COMPLAINT

### I. INTRODUCTION

Plaintiff, Christopher W. Lambert ("Plaintiff"), brings this action against Holy Family University ("Defendant"), for violations of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

When Defendant hired Plaintiff as Website Manager in June 2021, Defendant was aware of Plaintiff's disabilities, including depression and severe asthma, and granted him a full-time remote work accommodation. During his employment, Plaintiff consistently performed his job duties in a highly competent manner. However, after Anne M. Prisco, Ph.D. became Defendant's President in July 2021, Plaintiff learned that Dr. Prisco disapproved of remote work arrangements and was unaware that Plaintiff had been granted this accommodation for his disability. From that point forward, Plaintiff was subjected to hostile and dismissive treatment.

1

In February 2024, while Plaintiff was hospitalized and on medical leave, Defendant posted an advertisement for his position. When Plaintiff returned to work, he requested simple and temporary accommodation - extra time to complete assignments due to blurry vision caused by a disability-related event. Despite being medically cleared to work with this accommodation, Defendant's Human Resources personnel instructed Plaintiff to cease working immediately, threatened to cut off his system access, and forced him out of work until he obtained additional clearance from an ophthalmologist. On April 19, 2024, within approximately four weeks of Plaintiff's return to work, Defendant terminated Plaintiff's employment, citing the pretextual reason of "position elimination."

Plaintiff was terminated because of his disability and his need for accommodations. Plaintiff seeks all damages, including economic loss, compensatory damages, punitive damages, attorneys' fees and costs, and all other relief this Court deems appropriate.

## II. PARTIES

1.    Plaintiff, Christopher W. Lambert, is an individual and a citizen of West Virginia.

2.    Plaintiff resides in White Sulphur Springs, WV 24986.

3.    Defendant Holy Family University is a university organized under the laws of the Commonwealth of Pennsylvania with its principal place of business at 9801 Frankford Avenue, Philadelphia, PA 19114.

4.    Defendant is engaged in an industry affecting interstate commerce and regularly does business in the Commonwealth of Pennsylvania.

5.    At all relevant times, Defendant employed fifteen (15) or more employees within the meaning of the ADA.

6.     At all relevant times, Defendant employed four (4) or more employees within the meaning of the PHRA.

7.     At all relevant times, Defendant employed one (1) or more employees within the meaning of the PFPO.

8.     At all relevant times, Plaintiff was an "employee" and Defendant was his "employer" within the meaning of the statutes which form the basis of this matter.

9.     At all relevant times, Defendant acted by and through its authorized agents, servants, workmen, and/or employees who were acting within the course and scope of their employment with Defendant and in furtherance of Defendant's business.

## III.    JURISDICTION AND VENUE

10.    The causes of action which form the basis of this matter arise under the ADA, the PHRA, and the PFPO.

11.    This Court has jurisdiction over Count I (ADA) pursuant to 28 U.S.C. §1331.

12.    Alternatively, the Court has diversity jurisdiction over all Counts pursuant to 28 U.S.C. §1332, as Defendant is a citizen of Pennsylvania and Plaintiff is not a citizen of Pennsylvania.

13.    This Court has supplemental jurisdiction over Count II (PHRA) and Count III (PFPO) pursuant to 28 U.S.C. §1367.

14.    Venue is proper in this District Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to these claims occurred within this District, including that Defendant's principal place of business and headquarters is located in this District, and the decisions regarding Plaintiff's employment, accommodation requests, medical leave, and termination were made in this District by managers located in this District.

15.     On or about June 10, 2024, Plaintiff filed a Complaint with the Philadelphia Commission on Human Relations ("PCHR") complaining of the acts of discrimination and retaliation alleged herein. Plaintiff's PCHR Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 17G-2024-00054. Attached hereto, incorporated herein, and marked as Exhibit "1" is a true and correct copy of the PCHR Complaint (with personal identifying information redacted).

16.     On or about August 27, 2025, the EEOC issued Plaintiff a Dismissal and Notice of Rights for Plaintiff's EEOC Charge. Attached hereto and marked as Exhibit "2" is a true and correct copy of the Notice (with personal identifying information redacted).

17.     This Complaint is being filed within 90 days of Plaintiff's receipt of the EEOC's Notice of Right to Sue.

18.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.   FACTUAL ALLEGATIONS

19.     Plaintiff began working at Defendant on or about June 1, 2021.

20.     Plaintiff consistently performed his job duties in a highly competent manner.

21.     Plaintiff last held the position of Website Manager.

22.     Plaintiff last reported to Sherrie Ann Madia,, Ph.D., then-Vice President, Marketing and Communications.

23.     Dr. Madia reported to Anne M. Prisco, Ph.D., President.

24.     Upon Plaintiff's hire, Defendant was aware that Plaintiff suffered from severe asthma and depression.

25.    Upon Plaintiff's hire, Defendant granted Plaintiff the reasonable accommodation of working remotely full time due to his disabilities.

26.    Plaintiff was able to perform his job duties from home, working remotely full time.

27.    On or about July 30, 2021, Defendant hired Dr. Prisco.

28.    Dr. Prisco had no role in Plaintiff being hired at Defendant.

29.    Dr. Prisco had no role in Plaintiff's reasonable accommodation request being granted.

30.    On or about September 29, 2023, Dr. Madia told Plaintiff that Dr. Prisco had not been aware that Plaintiff worked remotely full time.

31.    Dr. Madia further told Plaintiff that Dr. Prisco did not like it when employees worked remotely and wanted employees on campus.

32.    Dr. Madia further told Plaintiff that other employees had complained that Plaintiff was allowed to work remotely even though Dr. Prisco had reduced the number of days that other employees were allowed to work from home.

33.    Plaintiff was treated differently and worse, and in a hostile and dismissive manner, than nondisabled employees and/or employees who did not seek reasonable accommodations for a disability. By way of example, and without limitation:

    a. Plaintiff was ignored;

    b. Expectations for Plaintiff were changed after he had completed assignments;

    c. Plaintiff was given conflicting instructions;

    d. Plaintiff was held to a stricter, more stringent standard;

    e. Plaintiff was assigned projects and tasks that were unreasonable to complete in the timeframe provided;

  f. Plaintiff was blamed for issues out of his control;

  g. Plaintiff was set up to fail.

34. Prior to September 2023, Dr. Madia routinely supported Plaintiff's denial of staff website update requests when such requests were in violation of Defendant's style guide, created usability issues, or potentially exposed Defendant to ADA violations.

35. After September 2023, Dr. Madia no longer supported Plaintiff's decisions to deny staff website update requests.

36. In or around February 2024, Dr. Madia assigned Plaintiff a project to post Defendant's full course catalog on its website.

37. Plaintiff lacked the authority to determine relevant program requirements or to edit outdated catalog descriptions, both of which were required to complete the course catalog task.

38. Dr. Madia gave Plaintiff an unrealistic deadline within which to complete the course catalog task.

39. On or about February 8, 2024, Plaintiff reminded Dr. Madia that he would be out of the office on February 8 and 9, 2024 for a doctor's appointment.

40. In response, Dr. Madia assigned Plaintiff additional urgent projects, which prevented him from attending his doctor's appointment.

41. On or about February 29, 2024, Plaintiff was admitted to the intensive care unit in the hospital for type two (2) diabetes with hyperosmolar hyperglycemic state, sepsis, and asthma.

42. From approximately February 29 to March 11, 2024, Plaintiff was out of work on a medical leave of absence.

43. On or about March 5, 2024, while Plaintiff was on documented medical leave, Defendant posted an advertisement for Plaintiff's position.

44.    On or about March 11, 2024, Plaintiff returned to work from his medical leave of absence.

45.    On or about March 11, 2024, Plaintiff requested the temporary reasonable accommodation of extra time to complete assignments due to blurry vision caused by his diabetic event.

46.    On or about March 12, 2024, Ky Bashir, Human Resources Representative, instructed Plaintiff to stop working.

47.    Plaintiff advised Ms. Bashir that his doctor had cleared him to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by his diabetic event.

48.    Plaintiff further advised Ms. Bashir that he wanted to continue working and was able to continue working.

49.    On or about March 12, 2024, following the above, Plaintiff provided Ms. Bashir with a copy of his hospital records, which included his diagnoses, symptoms, and medical conditions.

50.    On or about March 12, 2024, following the above, Plaintiff advised Dr. Madia that his doctor had cleared him to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by his diabetic event.

51.    Plaintiff further advised Dr. Madia that he wanted to continue working and was able to continue working.

52.    On or about March 13, 2024, Jocelyn Virgil-Phillips, Vice President of Human Resources, instructed Plaintiff to stop working.

53.    Plaintiff told Ms. Virgil-Phillips that his doctor had cleared him to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by his diabetic event.

54.    Plaintiff further told Ms. Virgil-Phillips that he wanted to continue working and was able to continue working.

55.    Ms. Virgil-Phillips told Plaintiff that Plaintiff must cease working immediately and, if he did not, his access to Defendant's system would be cut off.

56.    Ms. Virgil-Phillips stated that Plaintiff could only continue to work if he had medical clearance from his ophthalmologist to work.

57.    From approximately March 13 to 15, 2024, Plaintiff was placed out of work.

58.    On or about March 15, 2024, Plaintiff provided Dr. Madia and Ms. Virgil-Phillips with a note from his ophthalmologist, clearing him to return to work on the condition that he wear reading glasses over his regular eyeglasses until his vision returned to normal.

59.    On or about March 18, 2024, Plaintiff returned to work.

60.    Following Plaintiff's return to work, representatives from Defendant's Human Resources Department advised Plaintiff that his job was not in jeopardy.

61.    On or about April 19, 2024, Defendant terminated Plaintiff's employment, effective immediately.

62.    Defendant's stated reason for Plaintiff's termination was position elimination.

63.    Plaintiff was the only employee reporting to Dr. Madia who was terminated on April 19, 2024.

64.    After Plaintiff's termination, Defendant assigned Plaintiff's job duties and responsibilities to nondisabled employees and/or employees who had not sought reasonable accommodations for a disability.

65.    Plaintiff was more qualified to perform his job duties and responsibilities than the nondisabled employees and/or employees who had not sought reasonable accommodations for a disability to whom his job duties and responsibilities were assigned.

66.    The discriminatory and retaliatory conduct of Defendant as alleged herein was sufficiently severe and/or pervasive to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Plaintiff believe that the conditions of employment had been altered and that a hostile work environment existed.

67.    Plaintiff's disabilities (including his recorded history thereof and Defendant's perception of him as a disabled person) and his requests for accommodation in connection thereto were each substantial, motivating, and determinative factors in Defendant's discriminatory and retaliatory treatment of him, including subjecting him to a hostile work environment, denying him an accommodation, failure to engage in the interactive process, and terminating his employment.

68.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendant, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures, the full extent of which is not known at this time.

## <u>COUNT I – AMERICANS WITH DISABILITIES ACT</u>

69.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

70.    At all relevant times, Plaintiff was "disabled" within the meaning of the ADA.

71.    At all relevant times, Plaintiff had a recorded history of a disability of which Defendant was aware.

72.    At all relevant times, Defendant regarded Plaintiff as a disabled individual.

73.    By committing the foregoing acts of discrimination and retaliation, Defendant has violated the ADA.

74.    Defendant acted with malice and/or reckless indifference toward the federally protected rights of Plaintiff and its conduct warrants the imposition of punitive damages.

75.    As a direct and proximate result of Defendant's violations of the ADA, Plaintiff has suffered the injuries, damages and losses set forth herein, including lost wages and emotional distress, and has incurred attorneys' fees and costs.

76.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

77.    No previous application has been made for the relief requested herein.

**<u>COUNT II – PENNSYLVANIA HUMAN RELATIONS ACT</u>**

78.    Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

79.    By committing the foregoing acts of discrimination and retaliation, Defendant has violated the PHRA.

80.    Said violations were intentional and willful.

81. As a direct and proximate result of Defendant's violations of the PHRA, Plaintiff has suffered the injuries, damages and losses set forth herein, including lost wages and emotional distress, and has incurred attorneys' fees and costs.

82. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

83. No previous application has been made for the relief requested herein.

### COUNT III – PHILADELPHIA FAIR PRACTICES ORDINANCE

84. Plaintiff incorporates by reference the foregoing paragraphs as if set forth herein in their entirety.

85. By committing the foregoing acts of discrimination and retaliation, Defendant has violated the PFPO.

86. Defendant acted willfully and intentionally, and with malice and/or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

87. As a direct and proximate result of Defendant's violations of the PFPO, Plaintiff has suffered the injuries, damages and losses set forth herein, including lost wages and emotional distress, and has incurred attorneys' fees and costs.

88. Defendant's conduct, as set forth above, was willful, malicious and undertaken with reckless indifference to Plaintiff's rights, warranting the imposition of punitive damages.

89. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendant's discriminatory, retaliatory, and unlawful acts unless and until this Court grants the relief requested herein.

90. No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendant's unlawful conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

      a.      declaring the acts and practices complained of herein to be in violation of the ADA;

      b.      declaring the acts and practices complained of herein to be in violation of the PHRA;

      c.      declaring the acts and practices complained of herein to be in violation of the PFPO;

      d.      enjoining and permanently restraining Defendant from engaging in the violations alleged herein;

      e.      entering judgment against Defendant and in favor of Plaintiff in an amount to be determined;

      f.      awarding damages to make Plaintiff whole for all lost earnings, earning capacity and benefits, past and future, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct; including, but not limited to back pay and front pay.

      g.      awarding compensatory damages to Plaintiff for past and future pain and suffering, emotional distress, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered or may suffer as a result of Defendant's unlawful conduct;

      h.      awarding punitive damages to Plaintiff under the ADA and the PFPO;

      i.      awarding Plaintiff such other damages as are appropriate under the ADA, the PHRA, and the PFPO;

j.      awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

k.      granting such other and further relief as this Court may deem just, proper, or equitable, including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACCI LAW, LLC**

Dated: <u>November 24, 2025</u>    By:    <u>                        </u>

Rahul Munshi
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
Phone: (215) 545-7676
Email: munshi@consolelaw.com

*Attorneys for Plaintiff*

13

# EXHIBIT 1

CITY OF PHILADELPHIA
PHILADELPHIA COMMISSION ON HUMAN RELATIONS

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| | : |
| **CHRISTOPHER LAMBERT** | :          Docket No. |
| | : |
| v. | : |
| | : |
| RESPONDENT: | : |
| | : |
| **HOLY FAMILY UNIVERSITY** | : |
| | : |

1.  The Complainant herein is:

    Name:          Christopher Lambert

    Address:      REDACTED
                  White Silver Spring, WV 24986

2.  The Respondent herein is:

    Name:          Holy Family University

    Address:      9801 Frankford Avenue
                  Philadelphia, PA 19114

3.  I, Christopher Lambert, the Complainant herein, allege that I was subjected to unlawful discrimination because of my disability (including history of and regarded as) and retaliation because of my seeking reasonable accommodations for my disability, as set forth below.

### Discrimination and Retaliation

**A. I specifically allege:**

[1]       I began working at Respondent on or about June 1, 2021.

[2]       I consistently performed my job duties in a highly competent manner.

1

[3]       I last held the position of Website Manager.

[4]       I last reported to Sherrie Madia, Vice President, Marketing and Communications.  Madia reported to Anne Prisco, President.

[5]       Upon my hire, Respondent was aware that I was diagnosed with severe asthma and depression.

[6]       Upon my hire, Respondent granted me the reasonable accommodation of working remotely full time due to my disability.

[7]       On July 30, 2021, Respondent hired Prisco, and I began indirectly reporting to her as my second-level supervisor.

[8]       Prisco had no role in my being hired at Respondent.

[9]       Prisco had no role in my reasonable accommodation request being granted.

[10]      On September 29, 2023, in a meeting with Madia, she told me that Prisco had not been aware that I worked remotely full time.  She stated that Prisco did not like it when employees worked remotely and wanted employees on campus.  She stated that employees had complained that I was allowed to work remotely when Prisco had reduced the number of days that other employees were allowed to work from home.

[11]      I was able to perform my job duties from home, working remotely full time.

[12]      I was treated differently and worse, and in a hostile and dismissive manner, than nondisabled employees and/or employees who did not seek reasonable accommodations for a disability were treated.

[13]      I was ignored.

[14]     Expectations for me were changed after I had completed assignments.

[15]     I was given conflicting instructions.

[16]     I was held to a stricter, more stringent standard.

[17]     I was piled on with work and tasks that were difficult to complete in the timeframe provided.

[18]     I was blamed for issues out of my control.

[19]     I was set up to fail.

[20]     On February 8, 2024, in the early morning, I sent an email to Madia, reminding her that I would be out of the office on February 8 and 9, 2024 for a doctor's appointment.

[21]     On February 8, 2024, in a response email from Madia, she assigned me additional urgent projects, which prevented me from attending my doctor's appointment.

[22]     On February 29, 2024, I was admitted to the intensive care unit in the hospital for my type two (2) diabetes with hyperosmolar hyperglycemic state, sepsis, and asthma.

[23]     On February 29, 2024, I went out of work on a medical leave of absence.

[24]     On March 1, 2024, I sent an email to Madia, informing her that I had been admitted to the hospital.

[25]     On March 4, 2024, I sent an email to Madia, stating that I would be out of work on medical leave through the end of the week.

[26]     On March 5, 2024, Respondent posted my position.

[27]     From February 29 to March 11, 2024, I was out of work on a medical leave of absence.

[28]     On March 11, 2024, I returned to work from my medical leave of absence.

3

[29]     On March 11, 2024, in an email to Madia, I requested the temporary reasonable accommodation of extra time to complete assignments due to blurry vision caused by my diabetic event.  My doctors stated that my eyesight would return to normal within four (4) to six (6) weeks.

[30]     On March 12, 2024, in a meeting with Ky Bashir, Human Resources Representative, she instructed me to stop working.  I stated that my doctor had cleared me to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by my diabetic event, and that my doctors stated that my eyesight would return to normal within four (4) to six (6) weeks.  I stated that wanted to continue working and was able to continue working.

[31]     On March 12, 2024, following the above, I provided Bashir a copy of my hospital records, which included my diagnoses, symptoms, and medical conditions.

[32]     On March 12, 2024, in an email to Madia, following the above, I stated that my doctor had cleared me to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by my diabetic event.  I stated that I wanted to continue working and was able to continue working.

[33]     On March 13, 2024, in a phone call with Jocelyn Virgil-Phillips, Vice President of Human Resources, she instructed me to stop working.  I stated that my doctor had cleared me to return to work with the reasonable accommodation of extra time to complete assignments due to blurry vision caused by my diabetic event.  I stated that I wanted to continue working and was able to continue working.  She stated that I must cease working immediately and, if I did not, my access to Respondent's system would be cut off.  She stated that I could only continue to work if I had medical clearance from my ophthalmologist to work.

[34]      From March 13 to 15, 2024, I was placed out of work.

[35]      On March 15, 2024, I provided Madia and Virgil-Phillips with a note from my ophthalmologist, clearing me to return to work on the condition that I wear reading glasses over my regular eyeglasses until my vision returned to normal.

[36]      On March 18, 2024, I returned to work.

[37]      On April 19, 2024, in an email from Madia, copying Virgil-Phillips, Respondent terminated my employment, effective immediately.  The stated reason was position elimination.

[38]      I was the only disabled employee reporting to Madia.

[39]      I was the only employee who had sought reasonable accommodations for a disability directly reporting to Madia.

[40]      I was the only employee reporting to Madia who was terminated on April 19, 2024.

[41]      At the time of my termination, in addition to me, the following employees directly reported to Madia.

      (a) Jan Giel, Director, Marketing and Communications;

      (b) Sarah Merrill, Senior Graphic Designer;

      (c) Zach Nolter, Graphic Designer.

[42]      Respondent assigned my job duties and responsibilities to nondisabled employees and/or employees who had not sought reasonable accommodations for a disability.  I was more qualified to perform my job duties and responsibilities than the nondisabled employees and/or employees who had not sought reasonable accommodations for a disability to whom my job duties and responsibilities were assigned.

[43]     Respondent failed to reasonably accommodate me for my disability.

[44]     Respondent failed to engage in an interactive process to determine what accommodations were necessary and/or reasonable.

[45]     Respondent failed to remedy or prevent the disability discrimination and retaliation against me.

[46]     Respondent terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability.

[47]     Respondent subjected me to a hostile work environment because of my disability and/or my seeking reasonable accommodations for my disability.

[48]     I did not have any performance or disciplinary issues throughout my employment.

[49]     Respondent's disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[50]     Respondent's comments and conduct evidence a bias against disabled employees and/or employees who seek reasonable accommodations for a disability.

**B.**  Respondent has discriminated against me because of my disability (including history of and regarded as) and retaliated against me for seeking reasonable accommodations for my disability in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.  The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

  **X**      **Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101,** *et seq.*

**("PFPO"), Section   9-1103  .**

5.  Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

  **X**      **This charge will be referred to the EEOC for the purpose of dual filing.**

6.  The Complainant seeks that Respondent be required to:

    a)  Make the Complainant whole.

    b)  Eliminate all unlawful discriminatory practice(s) and procedure(s).

    c)  Remedy the discriminatory effect of past practice(s) and procedure(s).

    d)  Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

    e)  Provide such further relief as the Commission deems necessary and appropriate.

## <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

June 10, 2024
_____                   _____
(Date Signed)                 (Signature)     Christopher Lambert
                                              REDACTED
                                              White Silver Spring, WV 24986

# EXHIBIT 2

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Philadelphia District Office**
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website:  www.eeoc.gov

## <u>DETERMINATION AND NOTICE OF RIGHTS</u>
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/27/2025

**To:** Mr. Christopher W. Lambert
<span style="background:black;color:white">REDACTED</span>
WHT SULPHUR SPGS, WV 24986
Charge No: 17G-2024-00054

EEOC Representative and email:    Legal Unit
(267) 589-9707

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Karen McDonough
08/27/2025

Karen McDonough
Deputy Director

**Cc:**
Brett M Waldron Esq.
Montgomery McCracken Walker & Rhoads, LLP
1735 Market Street
Philadelphia, PA 19103

NA NA
2398 Big Draft Road
White Sulphur Springs, WV 24986

Emily R Derstine Friesen Esq.
Console Mattiacci Law
1525 Locust Street, 9th  Floor
Philadelphia, PA 19102


Please retain this Notice for your records.